Baldwin, J.
delivered the opinion of the Court.
The Court is of opinion, that the decree of the Circuit Court of Stafford, in the proceedings mentioned, having directed the money of Burrage in the hands of Daniel Emmons to be paid by the latter to Slaughters adm’r, towards the discharge of the debt by a previous decree in the same suit recovered against Burrage and Hempstead, the said Slaughters adm’r thereby acquired an equitable right to the bond executed, as collateral security, to said Burrage by said Daniel Emmons, together with James S. Emmons and the appellant’s intestate, for the money in the hands of said Daniel Emmons as aforesaid; which equitable right must prevail against the claim of the appellee Deshields under the forged assignment of said bond purporting to have been made by said Burrage to Cooke: and that the appellant’s intestate was properly in a Court of Equity, for the purpose of restraining the said Deshields from enforcing payment to himself of the judgment at law recovered by him for his own benefit, in the name of said Burrage, against the appellant’s intestate and the other obligors in said bond; if the said decree in favour of Slaughters adm’r■ still remains unsatisfied; or, if the same has been paid by the said Daniel Emmons, to have the equities amongst the parties, in the last mentioned aspect, adjudicated. The Court is therefore of opinion that the said Circuit Court of Culpeper erred in dissolving the appellant’s injunction and dismissing his bill, instead of directing said Slaughters adm’r to be made a party defendant, in order to a hearing and decision of the case according to the rights of the several parties.
*11 Decree reversed and canso remanded to be farther pro-needed in according to the principles of the foregoing opinion and decree.
After the opinion of the Court in this case had been delivered, the appellee by his counsel moved for a rehearing of the cause.
Baldwin, J.
It is unquestioned and unquestionable that, by force of the decree of the Circuit Court of Stafford, Slaughter’s adm’r acquired an equitable right to the bond executed by Jameson, Daniel Emmons and James S. Emmons to Burrage. Upon the proofs in the cause, the claim to the bond set up by Deskields as assignee of Cooke, the pretended assignee of Burrage, is utterly without foundation; it appearing that the assignment purporting to have been made by Burrage was without his authority, knowledge or consent, and a mere forgery perpetrated by Daniel Emmons for his own benefit. It follows that Deshields had no right to prosecute the action at law upon the bond: and, if he had brought it in his own name, might have been defeated, by putting him upon the proof of the alleged assignment from Burrage. Of this lawful and just defence, Jameson was deprived by the mode of prosecuting the action, which was brought in the name of Burrage for the benefit of Deshields; and this kept out of view and precluded all enquiry into the genuineness of the assignment.
Under these circumstances, Jameson had a clear right to be relieved in a Court of Equity, against the effort of Deshields to coerce payment to himself by process of execution. The latter as assignee of Burrage had no just demand against him; and the payment of the money to Deshields would have been no protection to Jameson, against the right of Slaughter’s adm’r, or any person claiming under him. I need not enquire whe *12 Iher if the judgment had been apparently for Burrage’s own benefit, and Jameson, without notice of the forgery, and of the right of Slaughter’s adm’r, had paid the execution to the sheriff or to the attorney on the record, he would have been protected by such payment. Here it appeared from the record that the action, though prosecuted in the name of Burrage, was for the benefit of Deshields, and that he claimed under the assignment of Burrage ; and Jameson had actual notice of the forgery, and of the right of Slaughter’s adm’r. Under these circumstances, if he had paid, instead of resisting the payment of the execution, there is no principle or authority, that I am apprised of, which would have protected him against the assertion of the right of Slaughter’s adm’r, or of any one claiming under him, by assignment or substitution.
There is no proof, or even suggestion, in the record, that the decree of Slaughter’s adm’r, and consequently his equitable right to the bond in question, has ever been discharged. Nor if discharged, would that circumstance destroy Jameson’s title to relief in a Court of Equity. If the decree has been paid, it must have been by the absent debtors Burrage and Hempstead, or one of them, against whom the foreign attachment of Slaughter’s adm’r was prosecuted; or by Daniel Emmons, the home defendant in that case, in whose hands the money for which the bond in question was executed, was attached. If paid 'by Burrage, the obligee in the bond, his right to it, and to the judgment recovered thereupon, would have been completely restored, and Jameson could not have resisted a demand on his part for payment thereof.
Thus, whether the equitable right of Slaughter's adm’r to the bond in question is still subsisting, or has been extinguished, the title of Jameson to relief against the judgment recovered by Deshields for his own benefit, in the name of Burrage, is to my mind perfectly *13 clear. In the former case, the relief ought to be for the . 1 . . whole amount of the judgment; m the latter case, it ought to be for the whole amount, if the decree has been . . discharged by Burrage, or if by Darnel Bmmons, then for so much as, upon an adjustment of the equities amongst the obligors themselves, shall be found to exceed the sum properly chargeable to Jameson.
But upon the hearing of the cause in the Circuit Court, there was a serious obstacle in the way of the proper relief to Jameson. He had failed to make Slaughter’s adm’r a defendant to his bill. And the Chancellor, instead of removing this obstacle, by directing Slaughter’s adm’r to be made a party, dismissed the plaintiff’s bill; thus denying him all relief, and giving full efficacy to Deshields’s demand under the forged assignment.
The reasoning and authorities of the appellee’s counsel are quite satisfactory to establish, that where a plaintiff in equity has shewn no right to relief, an appellate Court will not reverse a decree dismissing his bill, to enable him to introduce new parties, and thereby make a new case upon the merits. But it would be difficult to produce any reason or authority for the proposition, (which indeed the learned counsel has not ventured to assume,) that where the plaintiff has shewn a right to . relief against the defendants before the Court, his bill ought to be dismissed, because the proper relief cannot bo extended to him, in consequence of his omission to make other necessary parties. The directly opposite rule is well settled. The effect of an objection successfully taken for want of parties is not that the bill is dismissed, but that it stands over with leave to amend by adding the necessary parties: and if a defect of parties is apparent upon the record, the Court will take the objection, though the defendant do not; and the Court of appeal, if there he a defect of parties, will send the case back to the Court below. Calvert on Parties 116; 17 L. Lib.; 2 Rob. Pract. 276.
*14 If the appellee’s counsel had succeeded in demonstrating that Slaughter’s adm’r is not a necessary party, it would avail him nothing, without going further, and shewing that the appellant is entitled to no relief upon the meritsfor if entitled to relief he ought to have it, whether Slaughter’s adm’r be a necessary party or not. It is an entire misapprehension of the decree of this Court (now sought to be reheard) to suppose that it reverses the decree of the Circuit Court, on the ground that Slaughter’s adm’r ought to have been a party. The ground of reversal is that the Chancellor erroneously dismissed the plaintiff’s bill, instead of giving him relief upon the merits, for which purpose it was proper that Slaughter’s adm’r should be brought before the Court, as was therefore directed.
But I cannot doubt that Slaughter’s adm’r is a necessary party within the terms, as well as the true spirit and meaning, of the rule of 'equity on that subject'. The general rule was correctly stated by the appellee’s counsel from Story’s Eq. Plead. § 72, thus: All persons materially interested in the subject matter of a suit, either legally or beneficially, are to be made parties to it, either as plaintiffs or defendants, however numerous they may be, so that there may be a complete decree which shall bind them all:” and from Calvert on Parties, p. 11, as that writer proposes to restrict it, thus: “ All persons having an interest in the object of the suit ought to be made parties.”
Now, can it be doubted, upon the case presented by this record, that Slaughtei'’s adm’r appears to have an interest both in the subject and the object of the suit ? The subject of the suit is the debt secured by the bond and judgment in question: the object of it to prevent the appellee from coercing payment of it to himself from the appellant. As the equitable owner of the debt, Slaughter’s adm’r is interested in the subject: as the person entitled to receive payment of it, he is interested in the *15 object of preventing it from being paid over to another. It is in vaiu to urge, that if he is not made a party, the decree of the Circuit Court (dissolving the injunction, and dismissing the plaintiff’s bill, and thereby enabling Deshields to obtain the money) will not affect him, inasmuch as he may still have his remedy against Jame-son, and compel him to pay it over again. If this be considered a sufficient reason against the application of the rule, then it is obvious that the rule itself is for the most part nugatory, inasmuch as few decrees are binding upon those who are not parties to the suit, or can have the effect of preventing them from prosecuting any remedy, or making any defence, which they had before.
That the spirit and policy of the rule are applicable to a case like this, is a proposition, it seems to me, free from all difficulty. The reasons for the rule are thus stated by Judge Story as deduced from the authorities: “ It is the constant aim of Courts of Equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject matter of the suit, so that the performance of the decree of the Court may be perfectly safe to those who are compelled to obey it, and also that future litigation may bo prevented.”—“ By this means the Court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parlies before it, or to others who are interested in the subject matter by a decree, which might otherwise bo grounded upon a partial view only of the real merits. When all the parties are before the Court, the whole case may be seen: but it may not, where all the conflicting interests are not. brought out upon the pleadings by the original parties.” Story’s Eq. PI. § 72.
Now, the decree of the Chancellor in this case dissolving the plaintiff’s injunction and dismissing his bill, *16 is virtually a decree that he shall pay the money to Deshields, who claims under the forged assignment. Jameson is thus, if the decree is to stand, exposed to necessity of paying the money again; thus making it certain that injustice is done to him: and the person ' 1 justly entitled is subjected to the necessity and hazard of future litigation. That the decree is founded upon a partial view only of the real merits is evident from the fact, that there is not a particle of proof, or even allegation, in the record, that Slaughter’s adm’r has obtained satisfaction: and we have had an elaborate discussion upon the effect of the decree against Daniel Emmons on the rights of the present parties, without an intimation that he has ever paid the money, though without such payment neither he, nor those claiming under him, can have acquired a scintilla of title to the subject matter in controversy.
On the other hand, if the Chancellor, instead of dismissing the plaintiff’s bill, had directed Slaughter’s adm’r to be brought before the Court, the way to a complete and final adjustment of all conflicting interests would have been made perfectly plain and easy. Upon the coming in of his answer, it would have appeared whether he had been paid or not. If not, then there would have been nothing to do but to decree payment to him by Jameson, and a perpetuation of the injunction against Deshields. Or, if it appeared that the decree had been satisfied by Daniel Emmons, then Deshields might have been treated as his assignee, and as such entitled to satisfaction of the debt from the coobligors, subject to their equities against Daniel Emmons, arising out of his liability to them for contribution, or for any other matters of equitable discount.
It is in vain that the appellee’s counsel urges a presumption of satisfaction to Slaughter’s adm’r. If an actual payment to him, as I have shewn, would not repel the appellant’s right to relief, much less would the *17 mere presumption. But what room is there for such presumption ? It is in no wise suggested in the appellee’s answer, and the supposed acquiescence of >'Slaughter’s adm’r indicates nothing to the purpose. The mere absence of activity on the part of an apparent owner of the subject is not a surrender of his title, and if it requires explanation, he ought to have an opportunity of giving it. The circumstance that Mr. Green, the adm’r of Slaughter, has argued the cause in this Court as counsel for the appellant, is at best but a shadow. He has treated the case professionally as he found it, with his accustomed zeal and ability, but he has not yet been heard as a party. When he comes to speak as Slaughter’s adm’r, he will doubtless do so decisively; but how can any thing be inferred from his silence before he has had an opportunity of being heard ?
In truth, the wisdom of the rule requiring all persons interested in the subject and object of the suit to be made parties cannot be better illustrated than by this very case. The counsel concerned for the present parties, skilful and learned as they are, have not been enabled to reach the full merits of the case; and their discussions have been for the most part merely formal and technical. They have lost sight of Slaughter’s adm’r, though it is only by substitution to him that either of their clients can have acquired any title to the subject matter in controversy. It is only as the assignee of Daniel Emmons that Deshields can gain any foothold in the cause, and yet in his answer he has roundly denied all right on the part of his real, though not formal, assignor. Jameson, too, has failed to shew any title to the subject, though the facts of the case establish his right to protection. Ho has asserted in his bill the erroneous proposition, that by the decree of Slaughter’s adm’r against Daniel Emmons, the latter has acquired a right to the debt in question; and upon this, and the relation which he bears to him as co-obligor, he builds *18 an equitable claim of his own. It is a false foundation, unless Daniel Emmons has actually paid.the money, which no one has yet pretended; but still Jameson has ample ground to stand upon, in the simple fact that it wou^ gross injustice to compel him to pay the money twice.
It is only by reasoning in a circle that Deshields can give any plausibility to his defence—first by contending it was Jameson's fault that Slaughter's adm’r was not made a party—that consequently his case ought to be treated without any regard to the apparent right of Slaughter's adm’r—and so, in that view, that there is no propriety in requiring the latter to be made a defendant, in order that he may receive satisfaction, and Jame-son protection. This brings us back to the question, whether, admitting the fault to have been in Jameson at first, he ought to be punished by a double exaction of the same debt, and the other parties in interest vexed by a renewed litigation ; especially as he may have been surprised at the hearing, there having been no objection previously to the omission of Slaughter's adm’r as a party, though the want of other specified parties was deliberately objected by Deshields in his answer, and the defect accordingly supplied by an amended bill.
It is true, in the language of the authority quoted by the appellee’s counsel, the exceptions to the general rule as to parties, “ will be found to be governed by the same principle, which is that, as the object of the general rule is to accomplish the purposes of justice between all the parties in interest, and it is a rule founded, in some sort, upon public convenience and policy, rather than upon positive principles of municipal or general jurisprudence ; courts of equity will not suffer it to be so applied as to defeat the very purposes of justice, if they can dispose of the merits of the case before them, without prejudice to the rights or interests of other persons who are not parties, or if the circumstances of the case *19 render the application of the rule wholly impracticable.” Story’s Eq. PI. >§> 77. But I am utterly at a loss to perceive within what exception to the general rule this can be brought; or how the purposes of justice can be sub-served, or the merits of the cause disposed of, or the rights and interests of third persons left unprejudiced, by dismissing the plaintiff’s bill; or that there is the slightest difficulty in the application of the rule to the present case.
After a careful rc-examination of the case, I am perfectly well satisfied with the decree of this Court already rendered, and think the motion for a rehearing ought to be overruled.
Cabell, P. and Brooke and Allen. J. concurred in Baldwin’s opinion.
Stanard, J. concurred in the results.
Motion overruled.